UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY C. STEPHENS, | |
| Plaintiff, | CIVIL ACTION NO. 1:19-cv-00102 |
| v. | (WILSON, J.)<br>(SAPORITO, M.J.) |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al., | |
| Defendants. | |

## **MEMORANDUM**

This is a prisoner civil rights case. At the time of filing, the plaintiff, Jeffrey C. Stephens, was a convicted prisoner incarcerated at SCI Dallas, a state correctional institution located in Luzerne County, Pennsylvania. During the course of this litigation, however, he was released upon expiration of his maximum sentence of imprisonment.

The plaintiff's *pro se* amended complaint named two defendants: the Pennsylvania Board of Probation and Parole (the "Board") and the Pennsylvania Department of Corrections (the "DOC"). The amended complaint alleged that the defendants discriminated against him based on his disabilities, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and deprived him of

his rights under various provisions of the United States Constitution, made actionable by 42 U.S.C. § 1983. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants). In particular, the plaintiff claimed that, over the course of years, he had been interviewed by the Board and denied release on parole eleven times. He claimed that these repeated denials of parole by the Board, and several negative parole recommendations by the DOC to the Board, constituted unlawful discriminatory treatment based on his disabilities of alcoholism and post-traumatic stress disorder. Based on this same conduct by the defendants, the plaintiff further asserted double jeopardy, equal protection, substantive due process, and *ex post facto* claims under § 1983.

The defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. We entered a report recommending that the motion be granted. Upon review, the court adopted our recommendation in part and rejected it in part. The court granted summary judgment in favor of the defendants and against the

plaintiff with respect to his § 1983 claims, but it deferred ruling on the plaintiff's ADA claims, remanding the matter to us for consideration of a request by the *pro se* plaintiff for further discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

The plaintiff had served on the defendants several iterations of the same set of several requests for the production of documents. Generally, these requests sought the production of documents considered by the Board in connection with its several decisions denying parole or by the DOC in connection with its negative parole recommendations. With respect to the Board, the plaintiff requested various risk and needs assessments, evaluations, and reports considered by the Board in making its decision,[1] any reports of criminal conduct considered by the Board, and a sex offender assessment prepared by the Pennsylvania Sex

---

[1] Specifically, Stephens requested copies of any LSI-R (Level of Service Inventory-Revised), OVRT (Offender Violence Risk Typology), PBPP-361 Parole Decisional Instrument, Static-99, RRASOR (Rapid Risk Assessment for Sexual Offense Recidivism), SONAR (Sex Offender Need Assessment Rating), STABLE-2007, ACUTE-2007, Risk Matrix-2000, SORAG (Sex Offender Risk Appraisal Guide), SVR-20 (Sexual Violence Risk-20), VRS-2 (Violence Risk Scale), or other actuarial risk assessment tools employed by the Board in deciding to deny him parole.

Offenders Assessment Board in 2004.[2] With respect to the DOC, the plaintiff requested any reports of criminal conduct considered by the DOC in making its recommendation, any mental health evaluation reports considered by the DOC, and any parole vote sheets. The plaintiff, however, seeks these documents for an expansive time frame, from 2008 to the present.

The defendants objected to disclosure on the grounds that these discovery requests were overly broad and unduly burdensome and to the extent that they sought confidential information, the disclosure of which may jeopardize institutional safety and security.

"A Court is obligated to give a party opposing summary judgment an adequate opportunity to obtain discovery." *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 761 (3d Cir. 2019) (brackets and internal quotation marks omitted); *see also id.* ("If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not

---

[2] The plaintiff also requested broad statistical information regarding a narrow class of convicted sex offenders up for parole, to which the defendants objected on relevance and proportionality grounds. We agree that this information is immaterial to the plaintiff's ADA claims and disproportionate to the needs of the case.

material to the moving party's entitlement to judgment as a matter of law.").

As noted above, the plaintiff's surviving claims arise under Title II of the ADA. To establish an ADA claim, a plaintiff must demonstrate that: (1) "he is a qualified individual with a disability," (2) "who was precluded from participating in a program, service, or activity, or other wise subject to discrimination," (3) "by reason of his disability." *Furgess v. Pa. Dep't of Corrs.*, 933 F.3d 285, 288–89 (3d Cir. 2019). Moreover, to recover monetary damages, the plaintiff "must also show intentional discrimination under a deliberate indifference standard." *Id.* at 289; *see also S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263–64 (3d Cir. 2013).

Upon close review of the record before us, we conclude that the plaintiff's request for additional discovery should be granted in part. The information sought is clearly relevant to the issues of whether the Board's denial of parole was caused by discrimination on the basis of Stephens's disabilities, and whether any such discrimination was

intentional under a deliberate indifference standard.[3] The defendants' objections that the plaintiff's requests are overly broad and unduly burdensome, however, are well taken. The plaintiff's § 1983 claims have been dismissed on summary judgment, leaving only his ADA claims. Moreover, "the statute of limitations applicable to claims under Title II of the ADA . . . is the statute of limitations for personal injury actions in the state in which the trial court sits. In this case, the applicable statute is 42 Pa. Cons. Stat. § 5524, which prescribes a two-year statute of limitations." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). The original complaint in this action was received and docketed by the clerk on January 18, 2019, but it was constructively filed on January 11, 2019—the date when Stephens signed it and presented it to prison officials for mailing. *See Houston v. Lack*, 487 U.S.

---

[3] In its notice of decision dated January 11, 2017, the Board stated that the reasons it denied Stephens's application for parole included the following: (a) "Your risk and needs assessment indicating your level of risk to the community"; (b) "The negative recommendation made by the Department of Corrections"; (c) "Reports, evaluations and assessments/level of risk indicates your risk to the community"; (d) "Your minimization/denial of the nature and circumstances of the offense(s) committed"; and (e) "Your lack of remorse for the offense(s) committed." (Doc. 68, at 29–30.) On its face, this highly generalized, largely conclusory statement of reasons offers nothing at all to suggest whether the denial of parole was motivated by discriminatory intent or not.

266, 276 (1988); see also *Moody v. Conroy*, 680 Fed. App'x 140, 144 (3d Cir. 2017) (per curiam) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing."). The plaintiff has sought discovery with respect to parole decisions dating back more than a decade, but the only potentially actionable claims he has asserted concern the most recent denial of parole on January 11, 2017. Any claims concerning the ten earlier parole decisions are clearly time-barred, any information or documents concerning those prior decisions are largely immaterial to the plaintiff's actionable ADA claims, and we further find this more limited scope of discovery to be proportional to the needs of the case. Thus, we will limit the scope of additional discovery allowed to the January 2017 decision denying parole to Stephens.

We will direct the defendants to produce for inspection by the *pro se* plaintiff any non-confidential documents considered by the Board in connection with its January 11, 2017, decision denying parole or by the DOC in connection with its related negative parole recommendation. We are sensitive, however, to the defendants' concern that disclosure of confidential information may jeopardize institutional safety and security.

Thus, to the extent the defendants contend that any documents considered by the Board in connection with its January 11, 2017, decision denying parole or by the DOC in connection with its related negative parole recommendation are confidential and should be withheld from production to the *pro se* plaintiff because their disclosure poses a substantial risk of compromising institutional safety and security, we will direct the defendants to produce such materials to the court for *in camera* inspection. However, we encourage the defendants to scrutinize any responsive materials and consider whether some or all of these documents may be produced for inspection by the *pro se* plaintiff himself, in light of his recent release from incarceration.

For easier reference by the parties and the court, we will direct the defendants to Bates label all responsive documents, whether produced directly to the plaintiff or to the court for *in camera* inspection.

With respect to any documents withheld from the plaintiff and produced to the court for *in camera* inspection, we will also direct the defendants to prepare and serve a privilege log, in compliance with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure. Copies of this privilege log shall be provided to both the court and the *pro se* plaintiff.

- 9 -

An appropriate order follows.

Dated: November 8, 2022           ***s/Joseph F. Saporito, Jr.***
                                                         JOSEPH F. SAPORITO, JR.
                                                         United States Magistrate Judge